# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 23, 2009
NOT TO BE PUBLISHED

FINAL

$Supreme Court of Kentucky$

2007-SC-000280-MR

DATE 5|14|09 *Kelly Klaber* D.C.

FINLEY PERRY                                                        APPELLANT


ON APPEAL FROM MCCREARY CIRCUIT COURT
V.            HONORABLE JERRY D. WINCHESTER, JUDGE
NO. 06-CR-00051


COMMONWEALTH OF KENTUCKY                          APPELLEE


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING


Finley Perry appeals as a matter of right from an April 13, 2007 Amended Judgment of the McCreary Circuit Court convicting him of murder. In accord with an agreement between Perry and the Commonwealth, the Judgment also sentences Perry to prison for twenty-five years. During the guilt phase of the trial, the Commonwealth alleged, and the jury found, that on the morning of February 16, 2006, Perry murdered Ernest Ridner by shooting him with a shotgun at his (Ridner's) residence on Highway 896 in Parkers Lake, Kentucky, in McCreary County. Perry contends that the trial court erred when it refused to instruct the jury on extreme emotional disturbance and the lesser included offense of first-degree manslaughter. Agreeing with the trial court that the evidence did not support those instructions, we affirm.

## RELEVANT FACTS

The Commonwealth's proof included testimony by Bradley Ridner, Ernest Ridner's son, that on the morning of the shooting he was working outdoors not far from his father's residence and that at about 7:15 am he saw Perry, with whom he was familiar, arrive at and enter the residence. A short time later he heard a gunshot and saw Perry exit the residence and drive away. He promptly investigated and found his father lying face down on his living room floor with a gunshot wound to his back. Bradley summoned emergency assistance, but the elder Ridner was pronounced dead at the scene.

The homicide investigation was assigned promptly to Detective Billy Correll of the Kentucky State Police, and Detective Correll testified that he broadcast to other police agencies a description of Perry and his red Mazda pickup truck. Not long thereafter he received word from Kentucky State Police Officer Aaron Beighle that Perry had been stopped northbound on Interstate 75 less than ten miles from the Ohio border and that he was being detained at the Kenton County Detention Center. Detective Correll completed his investigation at Ridner's residence and then drove to northern Kentucky where he interviewed Perry and searched his truck. The search revealed a 20-guage shotgun, which ballistics testing later confirmed was the gun used to shoot Ridner.

Detective Correll's interview with Perry was recorded, and the video recording was played for the jury. During the interview Perry admitted having

shot Ridner and explained that he had been angered about five hours before the shooting, at about 2:00 that morning, when he had gone to Ridner's residence in hopes of buying some beer, but Ridner had refused to sell and had instead threatened him with a gun and demanded that he "get the hell out of here." He also claimed that a week earlier Ridner had burned his (Perry's) camper and bragged about it, and he further explained that he and Ridner had been feuding for years and that Ridner had refused to sell him beer on other occasions.

The Commonwealth's proof also included testimony by two of Perry's friends who had encountered him shortly before the shooting. Michael Hurd and Eric Barnett each testified that Perry had approached him within about an hour of the shooting and asked if he could borrow a gun with which to shoot Ridner. Both testified that Perry's demeanor had been calm and seemingly normal, although Barnett testified that Perry had smelled of alcohol and looked as if he might have been up for some time. Perry, however, had not appeared upset, and in fact had engaged in his usual bantering. Neither man loaned Perry a gun, and both testified that they did not take either the gun request or the threat seriously because Perry had made similar remarks many times before.

Perry did not testify in his defense, but his wife testified that in 2003 Perry had been diagnosed with cancer and that the illness had caused him to lose his employment and rely on disability payments. Since then, she testified,

his cancer had gone into remission, but nevertheless he had become increasingly depressed and increasingly dependent on alcohol and prescription pain medicine. Perry had left their house at about 11:00 am the day prior to the shooting and had not returned home that night. His wife did not know where he had gone or what he had done during his absence. She left for work at about 6:00 the morning of the shooting, and it was apparently not long after that that Perry had stopped by their house to pick up his shotgun.

At the close of the Commonwealth's case and again after his wife's testimony, Perry moved to have the murder charge dismissed and replaced with a charge of first-degree manslaughter. He argued that the evidence of his chronic despondency and his anger against Ridner compelled a finding that he had shot Ridner under the influence of an extreme emotional disturbance (EED). When the trial court denied those motions, Perry submitted jury instructions incorporating his EED claim, *i.e.,* both a murder instruction requiring acquittal on that charge unless the jury found that at the time of the shooting he "was not acting under the influence of extreme emotional disturbance for which there was reasonable explanation or excuse," and an instruction on first-degree manslaughter as a lesser included offense. Because in its view the evidence did not support an EED finding, the trial court rejected those instructions and instead instructed the jury simply that it should find Perry guilty of murder if and only if it believed beyond a reasonable doubt that Perry shot Ridner and that "in so doing he caused the death of Ernest Ridner

4

intentionally." Perry contends that the trial court erred by rejecting his EED-based instructions. We disagree.

## ANALYSIS

The murder statute, KRS 507.020, provides in pertinent part that a person is guilty of murder when

> [w]ith intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. However, nothing contained in this section shall constitute a defense to a prosecution for or preclude a conviction of manslaughter in the first degree or any other crime.

Under this statute, this Court has held, the absence of EED is an element of murder, but it is an element that is presumed to be satisfied unless the proof includes sufficient, non-speculative evidence of EED to call the presumption into reasonable doubt. In that case the element must be reflected in the instructions. Greene v. Commonwealth, 197 S.W.3d 76, 81 (Ky. 2006) (citing Gall v. Commonwealth, 607 S.W.2d 109 (Ky. 1980)) ("[W]hen there is [sufficient EED] evidence, the instruction should be included."). In the absence of such definitive, non-speculative EED evidence, however, an EED instruction is inappropriate. Talbott v. Commonwealth, 968 S.W.2d 76 (Ky. 1998).

"Extreme emotional disturbance," we have held, means

5

> a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as defendant believed them to be.

McClellan v. Commonwealth, 715 S.W.2d 464, 468-69 (Ky. 1986).

EED mitigation is thus limited to cases involving enraged or inflamed states of mind, a mind so emotionally disturbed as to overcome its judgment. An EED instruction is not appropriate, therefore, unless there is evidence that the defendant did in fact suffer an *extreme* emotional disturbance. Evidence of mere hurt or anger is not enough. Talbott.

Furthermore, although no longer requiring a "flash point" as was required under the common law's "sudden heat of passion" mitigator, our law still requires that the EED be traceable to a relatively sudden triggering event, or events, the extreme emotional effect of which continues uninterrupted until surfacing in the defendant's violent act. Benjamin v. Commonwealth, 266 S.W.3d 775 (Ky. 2008). An EED instruction is thus inappropriate unless there is evidence of such a triggering event or events. Chronic conditions, gradual victimization from the defendant's environment, or depression followed by a "downward spiral into heavy drug abuse," have been held not to satisfy the

6

triggering event requirement. <u>Halvorsen v. Commonwealth</u>, 258 S.W.3d 1, 4 (Ky. 2007); <u>Foster v. Commonwealth</u>, 827 S.W.2d 670 (Ky. 1991), <u>Cecil v. Commonwealth</u>, 888 S.W.2d 669 (Ky. 1994).

Finally, whereas the common law required that the defendant's provocation be reasonable under the circumstances as they actually existed, and thus did not offer mitigation to defendants who misperceived their circumstances, our law now requires that the provocation be assessed from the circumstances as the defendant perceived them to be, taking into account, if relevant, idiosyncratic character traits and details of the defendant's situation that have a bearing on his perceptions. <u>Greene</u>. Our law continues to require, however, that the provoking circumstances, as perceived by the defendant, be such as provide "a reasonable explanation or excuse" for the defendant's loss of judgment and uncontrolled reaction. *Id;* <u>Fields v. Commonwealth</u>, 44 S.W.3d 355 (Ky. 2001). Accordingly, we have rejected EED claims where the perceived provocation was the victim's refusal of a drug dependant defendant's demand for money or drugs, <u>Caudill v. Commonwealth</u>, 120 S.W.3d 635 (Ky. 2003), the victim's resistance to the defendant's robbery attempt, <u>Hodge v. Commonwealth</u>, 17 S.W.3d 824 (Ky. 2000), or the infant victim's crying and thumb sucking, <u>Schrimsher v. Commonwealth</u>, 190 S.W.3d 318 (Ky. 2006).

In light of this precedent, we agree with the trial court that Perry was not entitled to EED instructions. There was no evidence, in the first place, that Perry suffered an *extreme* emotional disturbance. On the contrary, Hurd and

7

Barnett testified that shortly before the shooting Perry was calm, coherent, and even capable of his usual joking. After the shooting, too, Perry's apparent attempt to flee from Kentucky suggests a mind fully engaged with its circumstances, not one overwhelmed by emotion. Perry's calm demeanor during his interview with Detective Correll did not suggest an extreme emotional disturbance, and although the interview included Perry's statements that he was angry about Ridner's burning Perry's camper and his curt refusal to sell Perry beer, mere anger, as noted above, is not sufficient to support EED instructions. There was nothing in Perry's statement or elsewhere in the evidence to suggest that his anger ever amounted to uncontrollable rage.

Even had there been evidence of rage, moreover, we have held, as noted above, that a victim's refusal of the defendant's demand for drugs or money does not provide a "reasonable explanation or excuse" for a violent loss of self control, and that holding applies with equal or greater force to a refusal to sell the defendant beer. The week-old camper incident does not change that result, for although property damage is a more significant insult than the refusal to sell beer, there was no evidence that the camper was particularly valuable or meaningful to Perry and thus no basis for believing that its destruction reasonably explained or excused a violent outburst, particularly an outburst delayed, as here, by a week-long cooling off period.

Finally, again as noted above, Perry's depression and his increasing use of alcohol and drugs, although potentially relevant to his perception of Ridner's

acts, could not themselves be deemed triggering events of an EED. They were chronic conditions, not sources of a sudden upwelling of emotion. There was no evidence, moreover, that Perry misperceived Ridner's acts as more provoking than in fact they were. On the contrary, Perry's statements to Detective Correll indicate that he perceived them as most people would, as an act of vandalism in the case of the camper and as, at worst, a display of contempt in the instances where Ridner refused to sell beer. Ridner's actions made Perry angry, to be sure, but there was no evidence that they so enraged or inflamed him as to overwhelm his judgment and cause him to act uncontrollably.

## CONCLUSION

The evidence, in sum, was that after years of feuding brought to a head by the camper and beer incidents, Perry formed the intent to kill Ernest Ridner, and in the early morning hours of February 16, 2006 he deliberately carried out that intent. The record is devoid of evidence that Perry acted uncontrollably under the influence of an extreme emotional disturbance, and absent such evidence the trial court correctly refused Perry's tendered jury instructions conditioning a murder verdict on the absence of EED and authorizing a verdict of first-degree manslaughter. Accordingly, we affirm the April 13, 2007 Amended Judgment of the McCreary Circuit Court

All sitting. All concur.

COUNSEL FOR APPELLANT:

Lisa Bridges Clare
Shelly R. Fears
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane  Suite 302
Frankfort, KY 40601-1133


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Henry  Albert Flores, Jr.
Assistant Attorney General
Office of Attorney General
Office of Criminal Appeals
1024 Capital Center Drive
Frankfort KY  40601-8204